# United States District Court

## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

Premises known as: 4046 Oakland Avenue, Apt. C, Shorewood, Wisconsin, which is an apartment located above the Bayshore Veterinary Clinic. The building is constructed of brownish brick and consists of four separate apartments. An entrance located on the building's western side provides access from Oakland Avenue to Apartment C.

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: **09 - M - 494**

I, THOMAS DOYLE, being duly sworn depose and say: I am a Special Agent of the United States Secret Service, and have reason to believe that on the premises known as

> 4046 Oakland Avenue, Apt. C, Shorewood, Wisconsin, which is an apartment located above the Bayshore Veterinary Clinic. The building is constructed of brownish brick and consists of four separate apartments. An entrance located on the building's western side provides access from Oakland Avenue to Apartment C.

In the State and Eastern District of Wisconsin there is now concealed certain property, which is:

SEE ATTACHED LIST OF ITEMS TO BE SEIZED, all of which is evidence of violations of Title 18, United States Code, Sections 371, 1343, 1344, and 1349.

The facts to support a finding of Probable Cause are as follows:

**See attached Affidavit of Special Agent Thomas Doyle.**

Continued on the attached sheet and made a part hereof.  √ Yes    No

Signature of Affiant, Thomas Doyle

Sworn to before me, and subscribed in my presence

August 14, 2009 at 2:55 PM
Date and time issued

THE HONORABLE WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
Name & Title of Judicial Officer

at Milwaukee, Wisconsin
City and State

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF WISCONSIN          )

COUNTY OF MILWAUKEE          )

I, Thomas F. Doyle, being duly sworn on oath, depose and state the following:

## Background

1.      I am a Special Agent with the United States Secret Service and have been so employed since 2005. My current duties include the investigation of various financial crimes, including the investigation of credit card fraud. I am a graduate of the Federal Law Enforcement Center, Artesia, NM, Mixed Basic Police Training Program, and the USSS James J. Rowley Training Center, Beltsville, MD, Uniformed Division Training Program. In addition, I am a graduate of the Federal Law Enforcement Training Center, Glynco, GA, Criminal Investigator Training Program, and the USSS James J. Rowley Training Center, Special Agent Training Program. It was there, through extensive lecture-based and practical training, that I learned how to investigate credit card-related fraud cases.

2.      This affidavit is based on my personal knowledge and information given to me by various bank officials, as well information I have gathered during the course of the investigation. I have set forth only facts I believe are necessary to establish probable cause in this matter. This is not a complete statement of all I know about the individual or events described in this affidavit.

3.      I submit this affidavit in support of a request for a search warrant authorizing the search of premises known as: 4046 Oakland Avenue, Apt. C,

Shorewood, Wisconsin, which is an apartment located above the Bayshore Veterinary Clinic. The building is constructed of brownish brick and consists of four separate apartments. An entrance located on the building's western side provides access from Oakland Avenue to Apartment C.

4. For the reasons set forth below, I submit that there exists probable cause to believe that evidence, as set forth in attachment A hereto, of a credit card "bust-out" scheme, committed in violation of wire fraud, bank fraud, and conspiracy to commit wire and bank fraud offenses can be found at these premises. I further submit that there exists probable cause to believe that Mikayelyan and Grigoryan committed this scheme by:

- fraudulently and artificially inflating the available balances on certain credit card accounts held in their names by posting payments to those accounts using convenience checks drawn on other credit card accounts in their names that were unsupported by sufficient available balances; and

- using the credit card accounts with the artificially inflated balances to purchase the two above-described BMW X3 vehicles and to make other large-dollar purchases, all on or about July 27, 2009, before the payment checks applied to those credit card accounts were returned for insufficient funds.

2

## Facts supporting finding of probable cause

5. This investigation began on August 11, 2009, upon the United States Secret Service's receipt of a telephone call from Bryan Rozanski, Fraud Investigator, Citibank, with regard to this suspected credit card bust-out fraud scheme. The fraud scheme was committed using accounts belonging to bank customers Rita Grigoryan and Sergey Mikayelyan. According to Rozanski, funds from convenience checks originating from US Bank credit card account number ending in digits 2499 belonging to Grigoryan were posted to four different credit card accounts held by Grigoryan and Mikayelyan.

## The scheme to defraud

6. On July 27, 2009, Grigoryan and Mikayelyan purchased the two above-referenced BMW SUVs from Autosource Motors, Inc., in Cudahy, Wisconsin, using seven different credit cards accounts, each issued to either Grigoryan or Mikayelyan. Six of those seven credit card accounts had fraudulently inflated available balances. Those six accounts were fraudulently inflated due to the fact that convenience checks – drawn against, and exceeding the available balance on, other credit card accounts issued in Grigoryan or Mikayelyan's names – had been posted to those six credit card accounts that Grigoryan and Mikayelyan used to buy the SUVs.

7. According to information I obtained on August 14, 2009, from representatives of Immigration and Customs Enforcement, Mikayelyan and Grigoryan are foreign nationals who entered the United States on July 19, 2007, and have permanent resident alien immigration status.

3

8. Based on information I have received from banks, I understand that bust-out schemes are sometimes committed by foreign nationals shortly before they intend to permanently depart the United States.

9. One account that Grigoryan and Mikelyan used to buy the SUVs was Sergey Mikayelyan's Citibank credit card account number ending in 2266. On July 27, 2009, $13,063.04 was charged against card account 2266 at Autosource Motors toward the purchase of the two BMW SUVs. The account balance for card account 2266 was inflated as follows. On or before July 27, 2009, a convenience check (#97379) from US Bank credit card account number ending in 2499, in the amount of $16,000, dated July 27, 2009, with Rita Grigoryan as the remitter, was posted to card account 2266. After the charge on card account 2266 was incurred, Citibank was notified that the $16,000 check deposited to card account 2266 had been declined because the $16,000 check amount exceeded the credit limit of the account against which the check was drawn. Credit card account 2266 was opened on September 28, 2005; had no convenience checks posted to or drawn against it before July 27, 2009; and until that date, the general account activity appeared routine.

10. A second account that Grigoryan and Mikelyan used to buy the SUVs was Sergey Mikayelyan's Citibank credit card account number ending in 3646. On July 27, 2009, $6,300 was charged against credit card account 3646 at Autosource Motors toward the purchase of the two BMW SUVs. On or before July 27, 2009, a second convenience check (#97378) drawn on Grigoryan's US Bank credit card account ending in 2499, in

4

the amount of $8,100, dated July 27, 2009, was posted to Sergey Mikayelyan's Citibank 3646 account. After the charge on card account 3646 was incurred, Citibank was notified that the $8,100 check deposited to card account 3646 had been declined because the $8,100 check exceeded the credit limit against which the check was drawn. Credit card account ending in 3646 was opened on April 5, 2006; had no convenience checks posted to or drawn against it before July 27, 2009; and until that date, the general account activity appeared routine.

11. A third account that Grigoryan and Mikelyan used to buy the SUVs was Rita Grigoryan's Citibank credit card account number ending in 0134. On July 27, 2009, $335.04 was charged against credit card account 0134 at Autosource Motors toward the purchase of the two BMW SUVs. On or before July 27, 2009, a third convenience check (#96927) drawn against US Bank credit card account number ending in 2499, again dated July 27, 2009, this one in the amount of $1,800, was posted to credit card account 0134. After the charge on card account 0134 was incurred, Citibank was notified that the $1,800 check deposited to card account 0134 had been declined because the $1,800 check exceeded the credit limit against which the check was drawn. Credit card account 0134 was opened on January 8, 2008; had no convenience checks posted to or drawn against it before July 27, 2009; and until that date, the general account activity appeared routine.

12. On August 12, 2009, Fraud Investigator (FI) Melody Skusek, US Bank, told me the following about the three convenience checks drawn against US Bank credit card

5

account number ending in 2499, which had been used to inflate the three above-referenced Citbank credit card accounts used to purchase the SUVs. FI Skusek provided documentation confirming that the three above-described convenience checks drawn against card account 2499 had been declined because the check amount exceeded the account 2499's credit limit, which was $6,500. The credit card account ending in 2499 was opened on April 15, 2008, with one convenience check posted to it on June 25, 2009, and the general account activity had been considered routine until this scheme was detected.

13.     Two other accounts that Grigoryan and Mikelyan used to buy the SUVs were Chase bank credit card accounts whose balances had also been inflated. On August 12, 2009, Fraud Investigator (FI) Robby Perry, Chase Bank, told me that on July 27, 2009, $2,000 had been charged at Autosource Motors, Incorporated against a Chase credit card account, ending in number 8152, issued to Mikayelyan, and that $3,000 had ben charged at Autosource Motors against another Chase credit card account ending in 7795, also issued to Mikayelyan. FI Perry also stated that two checks, from an unknown source, had been posted to Chase credit card account 8152, one in the amount of $2,100 and the other in the amount of $2,300, on or before July 27, 2009. Two more convenience checks from an unknown source had also been deposited to Chase credit card account 7795, on or before July 27, 2009. The credit card account ending in 8152 was opened on June 5, 2006, and the general account activity was considered

6

routine. The credit card account ending in 7795 was opened on April 16, 2008, and the general account activity was considered routine.

14.    The final two accounts Grigoryan and Mikelyan used to buy the SUVs were US Bank credit cards. On August 12, 2009, FI Melody Skusek, US Bank, related the following. On July 27, 2009, $5,000 was charged against US Bank credit card account ending in 4975, issued to Mikayelyan, at Autosource Motors, Incorporated. This particular account had never had any returned checks credited to it. However, the above-referenced $5,000 charge, combined with the previous existing balance, caused the account balance to reach the card's credit limit. This account was opened on June 26, 2007 with no convenience checks posted to it or drawn against it prior to this scheme, and the account's general activity was considered routine. On July 27, 2009, $2,500 was charged against US Bank credit card account number, ending in 7049, issued to Grigoryan, at Autosource Motors Incorporated. On or before July 27, 2009, credit card account 7049 had a $4,500 payment check posted to it but that check was returned for insufficient funds. The charge of $2,500, combined with the previous existing balance and returned payment check, caused the US Bank credit card account ending in 7049 to reach its credit limit. US Bank credit card account 7049 was opened on July 1, 2009; had no convenience checks posted to it or drawn against it before July 27, 2009; and the account's general activity appeared routine until that date.

7

**The purchase of the SUVs using the fraudulently inflated credit card balances**

15.    On August 13, 2009, I obtained records from Autosource Motors Incorporated regarding the purchase of the above-described vehicles. A total of seven credit cards were used to purchase the vehicles. The receipts reflected the following charges: Citibank credit card account numbers ending in 3646, 0134, and 2266 had a total of $19.698.08 in charges; US Bank credit card account numbers ending in 4975 and 7049 had a total of $7,500 in charges; Chase Bank credit card account numbers ending in 7795 and 8152 had a total of $5,000 in charges. The total amount reflected on the dealership's bill of sale for the vehicles was $32,218.08. The total amount charged to the seven different credit cards is $32,198.08. Nathan McFadden, General Manager for Autosource Motors Incorporated, conducted the sale and explained the $20 discrepancy was due to a wheel tax that was subtracted from the grand total. McFadden explained he was advised by Mikayelyan that he and Grigoryan were not residents of Milwaukee and the bill of sale reflected a wheel tax for Milwaukee residents. McFadden stated that he subtracted the $20 from the grand total and charged the two accordingly, but he did not change it on the bill of sale.

16.    According to McFadden, both Grigoryan and Mikayelyan participated in the purchase of the two SUVs. Both Grigoryan and Mikayelyan produced the credit cards used to buy the cars, and both produced Wisconsin driver's licenses, listing the address of 4046 N. Oakland Avenue, Apt. C, Shorewood, Wisconsin, to verify their identities.

8

17. On the afternoon of August 13, 2009, Mikayelyan and an unidentified white male, who Mikayelyan stated was his son, arrived at the dealership to request new tires for the white BMW. The men left the white BMW at Cudahy Auto Care, 5302 S. Packard Ave., Cudahy, Wisconsin, to be repaired, where it is now located.

18. According to McFadden, one of the two men stated that the grey BMW was already in a shipping container in Chicago, Illinois, for shipment to Moscow, Russia. According to McFadden, the suspects were anxious to have the white BMW repaired because they intended to ship it to Russia as well.

**Jewelry purchases using inflated-balance credit cards**

19. According to information I received from FI Perry of Chase Bank and FI Rozanski of Citibank, between July 27 and July 31, 2009, jewelry purchases totaling approximately $30,000 were made in jewelry stores in Milwaukee, Wisconsin, and Chicago, Illinois using some of the above-referenced and other inflated-balance credit cards.

**Links to the premises sought to be searched**

20. As noted above, when Grigoryan and Mikayelyan bought the SUVs on July 27, 2009, they provided the dealer with their Wisconsin driver's licenses to verify their identities. Each of their driver's licenses listed their residence as 4046 N. Oakland Avenue, Apt. C, Shorewood, Wisconsin.

9

21.    All the accounts associated with the above-listed transactions are listed to either Sergey Mikayelyan or Rita Grigoryan residing at 4046 N. Oakland Avenue, Apartment C, Shorewood, WI.

22.    Today, WE Energies confirmed that the utilities for 4046 N. Oakland Avenue, Apartment C, Shorewood, WI are listed to Sergey Mikayelyan, with Rita Grigoryan listed as a secondary name on the account.

23.    Based on my training and experience, I know that people who engage in credit card fraud often keep: records of the accounts that they use to commit their fraud, records of purchases made in the course of the fraud scheme, the items purchased and proceeds of those items.

## Conclusion

24.    I therefore submit that there exists probable cause to believe that Sergey Mikayelyan and Rita Grigoryan devised and executed a scheme to defraud Citibank, Chase Bank, and US Bank, which are federally insured banks, through the use of interstate wires, by:

> • fraudulently and artificially inflating the available balances on certain credit card accounts held in their names by posting payments to those accounts using convenience checks drawn on other credit card accounts in their names that were unsupported by sufficient available balances; and

10

- using the credit card accounts with the artificially inflated balances to purchase the two above-described BMW X3 vehicles and to make other large-dollar purchases, all on or about July 27, 2009, before the payment checks applied to those credit card accounts were returned for insufficient funds,

all in violation of Title 18, United States Code, §§ 371, 1343, 1344, and 1349.

25. I further submit that there exists probable cause to believe that evidence of the commission of these offenses, set forth in Attachment A, can be found at the residence of Sergey Mikayelyan and Rita Grigoryan, 4046 Oakland Avenue, Apartment C, Shorewood, Wisconsin.

# # #

Case 2:09-mj-00494-WEC Filed 08/24/09 Page 12 of 15 Document 1

## ATTACHMENT A

Description of items to be seized:

Records, in whatever form kept or stored (*i.e.*, paper, computer, electronic, or any other data storage medium), including, reflecting, or consisting of any of the following:

1. personal identification records and information,

2. financial records and information,

3. credit card records, including convenience checks,

4. receipts and invoices, including receipts of credit card purchases,

5. jewelry,

6. debit card records,

7. incorporation records,

8. employment records,

9. tax returns and tax return information,

10. address lists,

11. phone records,

12. travel records,

13. Shipping records, address lists, and address labels,

14. Calendars and diaries, and

15. correspondence, mailings, notes, or email messages concerning any of the topics enumerated above.

13

In conducting the search authorized by this warrant, if a computer is found, the agents shall seize the computer and shall promptly make an image of the hard drive. In searching the hard drive and any data storage media, the agents shall make reasonable efforts to use computer search methodologies that avoid searching files, documents or other electronically stored information that is not identified in the warrant. To that end, the search procedure of the electronic data contained within the computer and computer media, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques (the following is a non-exclusive list, as other search procedures within the scope of the warrant may be used):

a.   Surveying various file "directories" and the individual files they contain to identify other pertinent files such as chat logs or emails which may contain data that falls within the list of items to be seized as set forth herein (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

b.   Opening files and cursorily examining them in order to determine their precise contents;

c.   Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that

14

the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

d.  Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that pertain to the subject matter of the investigation; and

e.  Performing any other data analysis technique that may be necessary to locate and retrieve records of the types described in attachment A.

15